IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

KEITH THOMAS,                           :
                                        :
            Plaintiff,                   :       CIVIL ACTION FILE NO.
                                        :       1:11-CV-0391-WSD-AJB
      v.                                 :
                                        :
BANK OF AMERICA, N.A.; *et al.*,  :
                                        :
            Defendants.                  :

UNITED STATES MAGISTRATE JUDGE'S
FINAL REPORT AND RECOMMENDATION

Currently before the Court are motions to dismiss by Defendants Bank of
America, N.A., ("BANA"),[1] [Doc. 80], and  McCalla Raymer, LLC ("McCalla"),
[Doc. 81]; a motion to dismiss and for partial summary judgment by Northstar
Mortgage Group, LLC ("Northstar"), [Doc. 85]; Plaintiff's motion for injunctive relief,
[Doc. 98]; and Plaintiff's "Request for the Court to Construe and Convert His Motion
for 'Emergency Temporary, Preliminary and Other Such Injunctive Relief Enjoining
the Defendants from Foreclosing,' [Doc. 98], as a Non-Emergency Motion and to Set

---

[1]       Plaintiff has named BANA and BAC Home Loans Servicing, L.P.
("BACHLS") as separate parties to this action.  However, BANA avers that on July 1,
2011, BACHLS merged with and into BANA, so BANA responds in its own original
capacity and as successor by merger to BACHLS.

the Matter for a Hearing," [Doc. 101].

For the reasons below, the undersigned **RECOMMENDS** that BANA's and McCalla's motions to dismiss, [Docs. 80, 81], be **GRANTED**; Northstar's motion to dismiss (construed as a motion for judgment on the pleadings) and for partial summary judgment, [Doc. 85], be **GRANTED**; Plaintiff's motion for injunctive relief, [Doc. 98], be **DENIED AS MOOT**; and Plaintiff's motion to change the motion for injunctive relief to one for "non-emergency" injunctive relief, [Doc. 101], be **DENIED**.

## I.    Introduction

This case involves claims related to the postponed foreclosure of residential property located at 2655 West Road, Riverdale, Georgia. [*See* Doc. 1-1].  The relevant procedural history and facts are as follows.

### A.    Procedural History

On February 8, 2011, Plaintiff, proceeding *pro se*, filed his initial complaint against numerous defendants alleging numerous claims related to the foreclosure proceedings.  [Doc. 1].  On November 20, 2011, the undersigned issued the first Report and Recommendation ("R&R), [Doc. 61], recommending that the District Court grant in part and deny in part a motion to dismiss by BANA and BACHLS, [Doc. 8].  This was followed by a second R&R on December 20, 2011, [Doc. 64],  recommending that

2

AO 72A
(Rev.8/8
2)

the District Court deny Plaintiff's motion for default as to Northstar, [Doc. 35], and deny as moot motions to dismiss by McCalla, [Doc. 52], and Mortgage Electronic Registration Systems, Inc. ("MERS") and MERSCORP, [Doc. 43].[2] In short, Plaintiff's Fair Debt Collection Practices Act ("FDCPA") claim was allowed to proceed, and Plaintiff was allowed to amend his complaint to re-plead the claims that were not dismissed with prejudice–namely, his claims for wrongful foreclosure, intentional infliction of emotional distress, fraud, civil conspiracy, violation of the Real Estate Settlement Procedures Act ("RESPA"), declaratory relief, statutory fraud, and statutory fraudulent representation. [Doc. 61 at 77-79].

On January 31, 2012, the District Court adopted the first and second R&Rs. [Doc. 67]. In allowing Plaintiff to file an amended complaint, the District Court advised Plaintiff:

> Plaintiff may amend his Complaint on or before February 17, 2012, regarding the claims that have not been dismissed with prejudice. Any amended complaint shall: (1) not exceed twenty-five pages; (2) not include any claims that have been dismissed with prejudice; (3) clearly delineate each specific claim under a separate heading; (3) specify for each claim the specific law violated, how it was violated, when it was violated, and by which Defendant; (4) explain how this Court has personal jurisdiction over Defendants; and (5) clearly state the relief requested. If

---

[2]     MERS and MERSCORP were later dismissed from the case. [*See* Doc. 67 at 3 n.4].

Plaintiff asserts a Fair Debt Collection Practices Act claim, he must also explain how each defendant qualifies as a "debt collector" within the meaning of the Act.  Plaintiff is admonished that a failure to file an amended complaint that complies with the Court's instructions on or before February 17, 2012, may result in dismissal of this entire action pursuant to Local Rule 41.3, NDGa.

[*Id.* at 8.].

### B.    Plaintiff's Amended Complaint

On February 17, 2012, Plaintiff filed an amended complaint, which includes claims for violations of the FDCPA, wrongful foreclosure, civil conspiracy, declaratory relief, statutory fraud (O.C.G.A. § 23-2-51), and statutory fraudulent misrepresentation (O.C.G.A. § 23-2-52).  [Doc. 76].  In the amended complaint, Plaintiff described BANA[3] as an FDIC-insured bank that "also operates in some capacity as a residential mortgage loan service entity for the collection of residential mortgage payments not originated by or funded by Bank of America."  [*Id.* at 2].  He described McCalla as a law firm acting on behalf of BANA and BACHLS "in support of their efforts to conduct the non-judicial foreclosure upon plaintiff's residential property referred to within this complaint and also referred to within this complaint as acting in a capacity

---

[3]      Plaintiff identifies Bank of America, BAC Home Loans Servicing LP, Countrywide Home Loans Servicing, LP, and Countrywide Bank FSB collectively throughout as Bank of America, and recognizes them as one entity "by and through merger."  [Doc. 76 at 2].

4

as a debt collector." [*Id.*].  He next described Northstar as "a Georgia corporation whose status as a mortgage loan originator in Georgia became effectively revoked as of February 2009 by order of the State of Georgia by and through a 'Cease and Desist' order issued against them from the State of Georgia Department of Banking and Finance." [*Id.*].  He also alleges that Northstar voluntarily dissolved in February 2011, but listed no properties or mortgages in Plaintiff's name as an asset.  [*Id.* at 2-3].  He also alleges that Northstar never was licensed in Georgia as a mortgage lender or financial institution.  [*Id.* at 3].

Plaintiff alleges that his claims arise from BANA's notices to him in May through September 2010 that it would foreclose on his residence.  [*Id.* at 4].  He claims that prior to May 2010, he paid BANA monthly mortgage payments, and states that:

> prior to the purported security deed assignment document dated 23 August 2010, the only purported document attributed to and presented by Bank of America as their authority to make a demand for money upon this plaintiff for any money related to a residential mortgage payment, and after having made numerous payments to Bank of America, plaintiff made repeated inquiries to Bank of America, both written and verbal, as to the name of the actual entity identifying themselves as the true party at interest in plaintiff's residential mortgage and was not given any responses in that regard.

[*Id.*].  Plaintiff then alleges that BANA "was quite aware of the fact that no assignment of a security deed existed that would have authorized the collection of a mortgage

5

payment from this plaintiff prior to the one created by them on 23 August 2010, but made intentional efforts at collecting money from plaintiff for a mortgage payment as described within this complaint."  [*Id.* at 4-5].  Thus, he contends, BANA advertised for a non-judicial foreclosure and mailed notices to Plaintiff in May through September 2010 despite "the knowledge that they [*sic*] had not been assigned interest in, did not hold title to, was not assigned any duties from the actual lending entity to collect money on their behalf and did not have any standing orders from either the Superior Court of Fulton, County, Georgia or from any other court that would have authorized Bank of America to proceed and conduct a foreclosure on the behalf of any entity."  [*Id.* at 5].

Plaintiff next alleges that in December 2009, Northstar was ordered to cease and desist by the Georgia Banking and Finance Division from conducting business in Georgia, and when it failed to comply with the conditions of the order, its loan originator license was revoked in February 2010, and has not been reinstated as of the date of the filing of the amended complaint.  [*Id.* at 5-6].  He claims that Northstar was only authorized in Georgia as a mortgage loan originator and not as a lender, and thus, when Plaintiff entered into a mortgage contract with Northstar on June 12, 2007, it misrepresented its status to Plaintiff's detriment.  [*Id.* at 6].

Plaintiff then states that BANA filed a proof of claim in Plaintiff's bankruptcy

6

proceeding purporting to possess the original mortgage note, but the claim was unaccompanied by any "affidavits of authentication," or documents demonstrating chain of custody or BANA's status as a trustee or successor-in-interest. [*Id.* at 6-7]. Plaintiff also asserts that in August 2010, BANA submitted to the bankruptcy court as part of its proof of claim an "Assignment of Security Deed" dated August 23, 2010, which was signed by Lureece D. Lewis as Authorized Agent and witnessed and notarized by two other persons. Plaintiff also alleges these documents were likewise filed with the Fulton County Superior Court. [*Id.* at 7]. He then claims that according to public records at the time the Assignment was executed Lewis was a staff attorney for McCalla and not an officer of Northstar, nor was she an officer of MERS, Inc. [*Id.*]. As a result, Plaintiff contends, "[t]he assignment document was and is fraudulent in nature and was used for that purpose by both McCalla [ ] and [BANA]." [*Id.*].

Plaintiff then describes the Assignment as identifying Northstar as the assignor that authorized its nominee, MERS, to do business on its behalf and listed Northstar's physical address in Ocala, Florida. [*Id.* at 7-8]. However, according to the Georgia Secretary of State and the Georgia Division of Banking and Finance, Northstar's physical address was in Marietta, Georgia, and not in Florida. [*Id.* at 8].

According to Plaintiff, Georgia Banking and Finance rules require that to assign

a security deed, one must have a Georgia lender or broker license, but Northstar's loan originator license already was revoked by the time of the August 23, 2010, assignment, constituting a criminal act which harmed Plaintiff. [*Id.*]. He alleges that BANA, Northstar and McCalla were aware that Northstar was not licensed to do business as a mortgage loan originator in Georgia as of August 23, 2010, as well as the fact that Northstar was never a licensed mortgage lender and did not have legal authority to identify itself as a mortgage lender or lender in any residential mortgage transaction involving Plaintiff and Northstar. [*Id.* at 8-9].

He further alleges that all real property records he possesses and which are on file with the Fulton County Superior Court Clerk's Office identify Northstar as the "Lender," which is an intentional misrepresentation by Northstar, and misled Plaintiff as to who was the actual lender in the June 12, 2007, mortgage. [*Id.* at 9].

Plaintiff next alleges that BANA used McCalla both as a debt collector and to conduct "the foreclosure action against this plaintiff." [*Id.*]. He contends that McCalla mailed notices to him demanding payment of a debt allegedly owed to BANA in the amount of $155,000 plus late fees, attorney fees and other costs. He alleges that this notice fraudulently represented that BANA/BAC Home Loans Servicing, LP was acting under the power vested in it by the note and the security deed to conduct a foreclosure,

8

when BANA "had not been assigned a Security Deed from any entity as advertised, was more than likely not in possession of the actual 'Note' as advertised within the notice as claimed within the notices during and on the dates of the notices mailed to plaintiff and advertising a pending foreclosure sale." [*Id.* at 10].  He alleges that he had received notice from Fannie Mae that it was in possession of the note and identifying BANA merely as the "servicer" and not a party in interest as claimed by BANA in the May through September 2010 notices.  [*Id.*].  Plaintiff then claims that

> [a]ll payments made to Countrywide Home Loans Servicing, LP, BAC Home Loans Servicing, LP, and to Bank of America, N.A. by this plaintiff from the period of time beginning around September 2007 up and through February 2010 were in violation of the Fair Debt Collections Practice Act given that the residential mortgage debt claimed to be owed to Bank of America and its' affiliates described within the notices of foreclosure and proofs of claim previously filed in the Bankruptcy are disputable by evidence supporting the claims within this complaint.

[*Id.* at 10-11].

As for his individual claims, Plaintiff alleges that BANA violated the FDCPA because it collected monthly mortgage payments from Plaintiff between September 2007 and December 2011.  In support of why he claims BANA is a "debt collector" under the FDCPA, Plaintiff alleges because of the misrepresentation about the assignment, BANA and McCalla were aware that no assignment of the security deed,

9

"whether valid or invalid," had taken place prior to the advertising of the foreclosure, and therefore, since BANA had no present right to possession of the property, the advertised debt could not have been in default at the time of the foreclosure advertisements.  [*Id.* at 12-13].

In support of why he claims McCalla is a "debt collector" under the FDCPA, Plaintiff alleges that McCalla mailed at least 10 letters to him demanding payment of the $155,000 debt allegedly owned to BANA, and advertised that he was in debt, in default and under notice of a pending foreclosure sale of his residence "but was done in support of the efforts of [BANA] to collect an alleged debt that this plaintiff herein claims to be totally disputed and in violation of The Fair Debt Collections Practice Act." [*Id.* at 13-14].  He further alleges that the allegation in the advertisements posted by McCalla that BANA possessed the note, and was entitled to collect the debt pursuant to the security deed was in dispute, as was Lewis' authority to sign the August 23, 2010, assignment.  [*Id.* at 15-16].

Next, although he acknowledges that the property was not foreclosed upon, Plaintiff sought injunctive relief preventing foreclosure[4] at any time in the future

---

[4]     He also seeks whatever other remedies the Court deems just and proper to prevent foreclosure.  [Doc. 76 at 17].

10

because (1) he disputes that BANA possesses the note because Fannie Mae advised him that it possessed the note and that BANA was the loan servicer for it, not Northstar; (2) there is a dispute about who was the actual lender authorized to sign the assignment; (3) Northstar did not possess a Georgia residential mortgage license on August 23, 2010; (4) MERS, acting a Northstar's nominee, did not have authority to act on behalf of any entity that was not properly licensed on August 23, 2010; (5) the security deed identified Northstar as the lender when it only was a mortgage loan originator; and (6) defendants cannot identify any financial transactions between plaintiff and the BANA entities secured by any other note or security deed that would authorize the collection of mortgage payments alleged to be due from Plaintiff.  [*Id.* at 16].

Plaintiff also brings a claim for fraudulent misrepresentation under O.C.G.A. § 23-2-52.  He claims that Northstar misrepresented itself as a licensed mortgage lender in the security deed and note, when it was only a loan originator and that as a result, Plaintiff was harmed.  [Doc. 76 at 19].  He also contends that BANA was aware or should have been aware that Northstar was only a loan originator and that the security deed and promissory note between Plaintiff and Northstar misidentified Northstar as a lender, and that as a result of the misrepresentation, Plaintiff was harmed.  [*Id.*].  He next alleges that BANA and McCalla knew or should have known

11

on or about May 1, 2010, that Northstar was not a Georgia (or Florida) residential mortgage licensee as represented in the assignment which was drafted by Lewis, and that they submitted these documents to the Bankruptcy Court and Fulton Superior Court, and that they both misrepresented that Lewis was an officer or agent of Northstar, and that use of this document would cause harm to Plaintiff.  [*Id.* at 20].

He also alleges that he is entitled to damages for statutory fraud under O.C.G.A. § 23-2-51.  He first claims that Northstar committed acts of statutory fraud on June 12, 2007, when it misrepresented itself as a lender within the residential mortgage contract involved in this case, and then assigned the servicing duties to Countrywide Home Loans, Inc. [Doc. 76 at 21].  He contends that since Northstar was not a licensed lender but instead a loan originator and did not lend Plaintiff money from its holdings but rather was "actually  paid a commission from the actual lender for the services rendered to complete all aspects required to satisfy a closing, the act of assigning a residential mortgage contract to another lender, broker, or entity was fraudulent," and that this was done to harm Plaintiff.  [*Id.*].  He also contends that Northstar, BANA and McCalla engaged in acts of fraud in violation of the statute when they advertised for foreclosure based on documents claiming that BANA could foreclose and had a right to demand payment, including the assignment.  [*Id.* at 21-22].

12

He also claims that these acts amount to a civil conspiracy.  [*Id.* at 22-23].

Plaintiff sought declaratory relief that the security deed be removed form his residence and that the "'Residential Mortgage Contract' " be "ordered null and void," [*id.* at 23]; and damages.  [*Id.* at 23-25].  Although he referenced documents throughout his amended complaint, Plaintiff attached no documents thereto.  [*See* Doc. 76].

On March 2, 2012, BANA filed a motion to dismiss, [Doc. 80].  On March 5, 2012, McCalla filed a motion to dismiss, [Doc. 81].  On March 22, 2012, Northstar filed a motion to dismiss and for partial summary judgment, [Doc. 85].  On June 14, 2012, Plaintiff filed a motion for injunctive relief, [Doc. 98].  Then, on June 25, 2012, Plaintiff filed a motion to change this motion to one for "non-emergency" injunctive relief.  [Doc. 101].

The undersigned first addresses the motions to dismiss by BANA, [Doc. 80], and McCalla, [Doc. 81], in Section II below.  Then, the undersigned addresses the motion to dismiss and for partial summary judgment by Northstar, [Doc. 85], in Section III.

## II.   Motions to Dismiss by BANA and McCalla, [Docs. 80 and 81]

### A.   Motion to Dismiss Standard

A court will grant a Rule 12(b)(6) motion to dismiss if the complaint "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  Under Rule 8

AO 72A
(Rev.8/8
2)

of the Federal Rules of Civil Procedure, a pleading states a claim when it contains, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed R. Civ. P. 8(a)(2). To determine whether a complaint fails to state a claim, the Court must apply the standard announced by the Supreme Court in *Bell Atl. v. Twombly*, 550 U.S. 544 (2007), described as follows:

> [T]he pleading standard Rule 8 announces does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement.
>
> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.
>
> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . . . Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that

14

requires the reviewing court to draw on its judicial experience and common sense.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) (alterations, citations, and internal quotation marks omitted).

A *pro se* complaint is construed more liberally than formal pleadings drafted by lawyers. *Ausar-El ex rel. Small, Jr. v. BAC (Bank of America) Home Loans*, 448 Fed. Appx. 1, 1 (11th Cir. Sept. 21, 2011) (citing *Powell v. Lennon*, 914 F.2d 1459, 1463 (11th Cir. 1990)). However, the Court may not "serve as de facto counsel for a party, or . . . rewrite an otherwise deficient pleading in order to sustain an action." *GJR Invs., Inc. v. Cnty. of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1998) (citations omitted), *overruled on other grounds by Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

In addition, "a pleading [cannot] survive dismissal when it consist[s] of only the barest of conclusory allegations without notice of the factual grounds on which they purport to be based." *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1271 (11th Cir. 2004). The complaint need not provide detailed factual allegations, but it must give sufficient factual allegations "to raise a right to relief above the speculative level"; that is, the complaint must give "only enough facts to state a claim to relief that

15

is plausible on its face." *Twombly*, 550 U.S. at 570.  In other words, the complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erikson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Twombly*, 550 U.S. at 555). Thus, "[w]ithout some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests."     *Twombly*, 550 U.S. at 569 n.3.

### B.      Consideration of Documents Attached to the Motion to Dismiss

While the Court must generally take the facts in a complaint as true for purposes of a motion to dismiss,  *Furry v. Miccosukee Tribe of Indians of Fla.*, 685 F.3d 1224, 1226 n.2 (11th Cir. 2012), "when the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern." *Crenshaw v. Lister*, 556 F.3d 1283, 1292 (11th Cir. 2009) (quoting *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1206 (11th Cir. 2007)); *see also Associated Builders, Inc. v. Ala. Power Co.*, 505 F.2d 97, 100 (5th Cir. 1974) ("Conclusory allegations and unwarranted deductions of fact are not admitted as true, especially when such conclusions are contradicted by facts disclosed by a document appended to the complaint.  If the appended document, to be treated as part of the complaint for all purposes under Rule 10(c), Fed. R. Civ. P., reveals facts

AO 72A
(Rev.8/8
2)

which foreclose recovery as a matter of law, dismissal is appropriate.") (citation omitted)); *Simmons v. Peavy-Welsh Lumber Co.*, 113 F.2d 812, 813 (5th Cir. 1940) ("Where there is a conflict between allegations in a pleading and exhibits thereto, it is well settled that the exhibits control.").[5]

As noted, Plaintiff referenced certain documents in his amended complaint but did not attach them to that pleading. BANA attached what appear to be the relevant documents referred to in Plaintiff's amended complaint to its motion to dismiss, and the parties' arguments depend heavily on these documents. Generally, a court must convert a motion to dismiss to a motion for summary judgment if it considers materials outside of a complaint. *See* Fed. R. Civ. P. 12(d); *Day v. Taylor*, 400 F.3d 1272, 1275-76 (11th Cir. 2005). However, a court need not make this conversion when considering a document attached to the complaint or to a motion to dismiss if "the attached document is (1) central to the plaintiff's claim and (2) undisputed." *Day*, 400 F.3d at 1276; *Arango v. U.S. Dep't of the Treasury*, 115 F.3d 922, 923 n.1 (11th Cir. 1997) ("Documents attached to and incorporated into the complaint were properly before the district court on a motion to dismiss."). In the Eleventh Circuit, this is referred to as the

---

[5]    Both *Associated Builders* and *Simmons* were quoted approvingly in *Griffin Indus., Inc.*, 496 F.3d at 1206.

17

" 'incorporation by reference' doctrine."  *Horsley v. Feldt*, 304 F.3d 1125, 1134

(11th Cir. 2002); *see also* Fed. R. Civ. P. 10(c).  A document is "undisputed" when its

authenticity is unchallenged.  *Day*, 400 F.3d at 1276; *Horsley*, 304 F.3d at 1134; *see*

*also FindWhat Inv. Grp. v. FindWhat.com*, 658 F.3d 1282, 1297 n.15 (11th Cir. 2011);

*Harris v. Ivax Corp.*, 182 F.3d 799, 802 n.2 (11th Cir. 1999) (stating that "a document

central to the complaint that the defense appends to its motion to dismiss is also

properly considered, provided that its contents are not in dispute").  In addition, the

Court may take judicial notice of public records without converting the motion to

dismiss into one for summary judgment.  *Horne v. Potter*, 392 Fed. Appx. 800, 802

(11th Cir. Aug. 16, 2010) (holding that district court may take judicial notice of public

records without converting a motion to dismiss into a motion for summary judgment

where the documents "were public records that were 'not subject to reasonable dispute'

because they were 'capable of accurate and ready determination by resort to sources

whose accuracy could not reasonably be questioned.' ") (citations omitted); *Clark v.*

*Bibb Cnty. Bd. of Educ.*, 174 F. Supp. 2d 1369, 1370 (M.D. Ga. 2001) ("A court

evaluating a motion to dismiss for failure to state a claim upon which relief can be

granted . . . may . . . consider any attachments to the complaint, matters of public

record, orders, and items appearing in the record."); *see also* Fed. R. Evid. 201 (stating

that the court may take judicial notice of a fact that is not subject to reasonable dispute because it "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned").  Nonetheless, documents outside the complaint may only be considered at the motion to dismiss stage to show their contents, not for the truth of matters asserted therein.  *Oxford Asset Mgmt. Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002); *Morgan v. Ocwen Loan Servicing, LLC*, 795 F. Supp. 2d 1370, 1374 n.4 (N.D. Ga. 2011) (Totenberg, J.) (holding that on ruling on motion to dismiss, court could not consider promissory note and assignment of security deed, where "Defendants [we]re attempting to use these documents to dispute a central factual allegation of Plaintiff's complaint, compared to the securities cases wherein courts have considered on a motion to dismiss documents required to be filed with the SEC of which the contents, and not the truth, were at issue.")[6]; *see also Velazquez v. GMAC Mortg. Corp.*, 605 F. Supp. 2d 1049, 1057 (C.D. Cal. 2008) (noting that "a court may take judicial notice of the undisputed matters of public record, e.g., the fact that a hearing took place, but it may not take judicial notice of disputed facts stated in public records.") (citing *Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001)).

---

[6]     The undersigned notes that the security deed and assignment in *Morgan* were filed with the appropriate county clerk's office.  [*See* Doc. 15-2 at 6, 20 in No. 1:10-cv-3555-AT (N.D. Ga.)].

Here, the documents attached to the motions to dismiss are central to Plaintiff's claims, and were duly filed in the records of the Fulton County Superior Court Clerk's Office.  Plaintiff, however, contends that the documents are "altered copies that have been doctored by defendants."  [Doc. 109 at 5; *see generally id.* 4-7].  Plaintiff bases this contention on his observation that the attached documents (which are copies of the recorded Security Deed, Note, and Assignment, [Docs. 80-1, 80-2, 80-3]) contain various markings, such as numbers and endorsements, that do not appear on copies of documents that he may have seen or received at closing.  [*E.g., id.* at 5].  The Court discusses each one of these documents in turn.

### 1. The Note, [Doc. 80-1]

Plaintiff specifically disputes Doc. 80-1 at 2 because of wording and a bar code on the bottom which he claims are not on his documents, [Doc. 109 at 5]; Doc. 80-1 at 3 because it contains markings and an endorsement to Countrywide Bank FSB, [Doc. 109 at 5]; Doc. 80-1 at 4 because it is an inserted page he had never seen, [Doc. 109 at 5][7]; and Doc. 80-1 at 7 because it is an "Allonge to Promissory Note" that he has never seen and which did not occur at the closing on June 12, 2007, [Doc. 109 at 5-6].  He also challenges the Note because it does not name any other entity as being

---

[7]     Doc. 80-1 at 4 appears to be the back side of Doc. 80-1 at 3.

the holder of the Note and thus BANA's claim to be the holder or to have purchased the Note from Northstar are fraudulent. [Doc. 109 at 6].

BANA notes that the reason the Security Deed exhibit has markings on it is because it is a copy of the recorded Security Deed and not a copy of the unrecorded document executed at closing. [Doc. 112 at 10]. BANA points out that Plaintiff would not necessarily possess a copy of the endorsed Note. [*Id.*]

The Court concludes that it can take judicial notice of the undisputed portions of the Note in considering the motion to dismiss. The fact that there are markings and a bar code on the note does not render it "disputed" for purposes of incorporation by reference because neither the markings nor the bar code are relevant to or central to Plaintiff's claims. Plaintiff does not dispute that he signed a Note on June 12, 2007, in favor of Northstar in the amount of $155,000. As a result, the Court can consider the exhibit, but not all of it. In the absence of some other evidentiary authentication, the Court will not consider the endorsement stamp on Doc. 80-1 at 3, the endorsement stamps on Doc. 80-1 at 4, or the Allonge to Promissory Note at Doc. 80-1 at 7. However, the Court rejects Plaintiff's argument that the Note cannot be considered because it does not name any other entity besides Northstar, and it does not name BANA. That argument goes to the merits of the dispute, not whether there is a dispute

21

about the authenticity of the document.

### 2.   The Security Deed, [Doc. 80-2]

Plaintiff also contends that the Security Deed, Exhibit B to the motion to dismiss, [Doc. 80-2],[8] is fraudulent because "it has been altered for the purpose of supporting fraud," has markings on it that do not match the documents he possesses and is thus not the same closing document affiliated with the security deed executed at closing. [Doc. 109 at 6-7]. He also alleges that the Security Deed does not mention BANA or identify any enforceable right BANA has against Plaintiff. [*Id.* at 7].

The Court rejects Plaintiff's arguments. He does not give any reason why he contends the document is altered, other than the existence of unidentified and unspecified marks on the document. The fact that there are marks on the document is immaterial, and does not detract from the fact that the Security Deed is central to the claims raised by Plaintiff in his Amended Complaint. As a result, the document is not subject to reasonable dispute and is capable of accurate and ready determination by resort to sources whose accuracy could not reasonably be questioned. Again, the Court rejects Plaintiff's argument that the document cannot be considered on a motion to

---

[8]      The Security Deed is recorded in the Fulton County, Georgia, land records in Book 45245, Page 448.

dismiss because it does not mention BANA; that argument goes not to authenticity but to the merits of his claim.

### 3.    Assignment of the Security Deed, [Doc. 80-3]

Regarding the Assignment of Security Deed, Exhibit C to the BANA's motion, [Doc. 80-3],[9] Plaintiff claims the document is fraudulent because it purports to show he was present when it was signed, when he was not; he did not assign any interest in the property to MERS on August 23, 2010, or at any other time; he has not been in the presence of any of the persons who claim he was present and witnessed his signature; and argues that Northstar did not assign its interest in the security deed to MERS and could not perform any such act on August 23, 2010, because its license had been revoked nine months earlier and therefore the document did not conform to Georgia law.  [Doc. 109 at 7-8].[10]

The Court rejects Plaintiff's arguments.  The other documents (i.e., the Note and the Security Deed) that the Court concludes are capable of being considered as

---

[9]     The Assignment is recorded in the Fulton County, Georgia, land records in Book 49355, Page 388.

[10]    In the Amended Complaint, Plaintiff also makes conclusory allegations that Lureece D. Lewis, who executed the Assignment as the authorized agent for MERS, was not authorized to do so.  [Doc. 76 ¶ 18].

23

incorporated by reference into Plaintiff's Amended Complaint, conclusively establish

that his arguments about the Assignment are plainly wrong.  The Assignment does not

purport to state that he was present when the document was prepared; rather it states

that Plaintiff executed a mortgage/security deed in favor of MERS, the nominee for

Northstar, which is on file at the Fulton County Superior Court Clerk's Office, and that

such mortgage secured a note in the amount of $155,000.00.  [Doc. 80-3 at 3].  This

statement is confirmed by reference to the Note.  The June 12, 2007 Note that Plaintiff

referenced in his Amended Complaint provides that Northstar was identified therein as

the Lender, and provided that the Lender may transfer the Note and that any Note

Holder was entitled to receive payment under the Note.  [Doc. 80-1 at 2].  The Note

also provided as follows:

> In addition to the protections given to the Note Holder under this Note, a
> Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"),
> dated the same date as this Note, protects the Note Holder from possible
> losses which might result if I do not keep the promises which I make in
> this Note.

[*Id.* at 3].

Then, the Security Deed, again which Plaintiff acknowledges signing in favor of

Northstar, provided in relevant part:

(C) "MERS" is Mortgage Electronic Registration Systems, Inc.  MERS is

24

a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the grantee under this Security Instrument. . . .

(D) "Lender" is NORTHSTAR MORTGAGE GROUP LLC. . . .

(E) "Note" means the promissory note signed by Borrower and dated June 12, 2007. The Note states that the Borrower owes Lender ONE HUNDRED FIFTY-FIVE THOUSAND and no/100 Dollars (U.S. $155,000.00) plus interest. . . .

. . .

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and Note. For this purpose, Borrower does hereby grant and covey to MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS, with the power of sale, the following described property located in the County of Clayton: [2655 WEST ROAD RIVERDALE, GEORGIA 30296]. . .

. . . Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any and all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of the Lender including, but not limited to, releasing and canceling this Security Instrument.

[Doc. 80-2 at 2, 3 (emphasis removed)].

Thus, well before August 23, 2010, Plaintiff acknowledged that MERS was a

25

nominee of Northstar and its successors and assigns, and on June 12, 2007, Plaintiff expressly conveyed to MERS, and its successors and assigns, various rights under the Security Deed, including the right to foreclose on Plaintiff's property.  As a result, Plaintiff's arguments about the supposed misstatements in the Assignment are belied by the express language in the Note and Security Deed that Plaintiff signed and relies upon.  Thus, the Court rejects Plaintiff's challenges to the contents of the Assignment of Security Deed, to the extent that they are in the nature of objections to the document's authenticity.

The Court also rejects Plaintiff's argument, not contained in his opposition brief but in his amended complaint, that the Assignment is "fraudulent" because there is no showing that Lewis was an authorized agent for MERS on August 23, 2010, when MERS purported to assign its interest in the security deed to BAC Home Loans Servicing, LP FKA Countrywide Home Loans Servicing, L.P.  Plaintiff lacks standing to challenge the Assignment of the Security Deed from MERS to BANA or its predecessors-in-interest.   Courts have repeatedly rejected the argument that a homeowner has standing to challenge the assignment of a security deed which grants the assignor a power of sale.  *See Peterson v. Merscorp Holdings, Inc.*, Civil Action No. 1:12-cv-0014-JEC, 2012 WL 3961211, at *10 (N.D.Ga. Sept. 10, 2012); *Bandele*

26

*v. Deutsche Bank Nat'l Trust Co.*, Civil Action File No. 1:11-CV-4257-TWT, 2012 WL 1004990, at \*2 (N.D.Ga. Mar.22, 2012) (same); *Montoya v. Branch Banking & Trust Co.*, Civil Action No. 1:11-cv-01869-RWS, 2012 WL 826993, at \*4 n.3 (N.D. Ga. Mar. 9, 2012) (noting that plaintiff lacked standing to challenge assignment of security deed "because she is a stranger to it"); *Breus v. McGriff*, 202 Ga. App. 216, 216, 413 S.E.2d 538 (1991) ("Appellants are strangers to the assignment contract between appellee and [Bank] and thus have no standing to challenge its validity.").   *But see Sutton v. Bank of Am., N.A.*, Civil Action No. 1:11-CV-3765-CAP, 2012 WL 2394533, at \*5 (N.D.Ga. Apr.11, 2012) (rejecting argument that plaintiff debtor lacks standing to challenge assignment, but finding in any event that plaintiff's reason for challenging the assignment–that individuals who signed on behalf of MERS were attorneys at law firm that conducted foreclosure for MERS' assignee–was without merit).  This conclusion is all the more applicable here where the documents Plaintiff signed acknowledged that the Security Deed was capable of being, and was in fact, assigned.

The Court also observes that district courts in this Circuit have taken judicial notice of recorded notes and security deeds in ruling on a motion to dismiss without converting the motion to one for summary judgment.  *See Shockley v. EMC Mortg.*

AO 72A
(Rev.8/8
2)

*Corp.*, 459 Fed. Appx. 821, 822 (11th Cir. Feb. 28, 2012) (district court did not err in taking judicial notice of publicly filed property records); *Yeboah v. Bank of New York Mellon*, No. 1:12-CV-02139-TWT-JFK, 2012 WL 4759246, at *3 n.2 (N.D. Ga. Aug. 30, 2012) (R&R), *adopted at* 2012 WL 4759242 (N.D.Ga. Oct 05, 2012); *Whisby v. Bank of America, N.A.*, Civil Action No. 5:12-CV-55(MTT), 2012 WL 2357212, at *1 n.3 (M.D. Ga. June 12, 2012); *see also Sneh v. Bank of New York Mellon*, Civ. No. 12-954 (MJD/JSM),  2012 WL 5519690, at *1 n.4 (D. Minn. Oct. 30, 2012) ("This Court has considered the exhibits submitted by BNYM in connection with its motion, such as the plaintiffs' executed promissory note, mortgage, recorded mortgage assignment and certificate of title, which are of public record, indisputably authentic or relied upon by plaintiffs in their Complaint.") (R&R), *adopted by* 2012 WL 5519682 (D. Minn. Nov. 14, 2012).

Likewise, district courts in this Circuit have taken judicial notice of assignments filed in the county courthouse in ruling on a motion to dismiss without converting the motion to one for summary judgment.  *Whisby*, *id.*; *Correa v. BAC Home Loans Servicing LP*, No. 6:11-cv-1197-Orl-22DAB, 2012 WL 1176701, at *4 (M.D. Fla. Apr. 9, 2012) (taking judicial notice of assignment of plaintiff's mortgage); *Grant v. BAC Home Loans Servicing LP*, Civil Action No. 1:11-CV-02253-RWS, 2012 WL 887590,

28

at *3 n.1 (N.D. Ga. Mar. 15, 2012) (same).

As a result, the Court rejects Plaintiff's challenge to the authenticity of the Assignment of Security Deed.

The undersigned therefore considers the documents attached to BANA's motion to dismiss, except where noted, and does not need to convert the motion to dismiss to one for summary judgment.[11]

## C.  BANA's Motion to Dismiss, [Doc. 80]

Plaintiff's claims against BANA are for violation of the FDCPA, fraud, fraudulent misrepresentation, civil conspiracy, wrongful foreclosure, and violation of the Georgia Residential Mortgage Act ("GRMA"), O.C.G.A. § 7-1-1000 *et seq.*[12]

### 1.  Arguments of the Parties

BANA states that Plaintiff's claims are "premised on a fundamental

---

[11]     The Court's conclusion should not give succor to defendants who think that a case can be short-circuited on a motion to dismiss by relying on the incorporation by reference doctrine.  As can be seen from the text, the undersigned spent considerable energy and pages discussing the incorporation by reference doctrine and its application to the facts of this case.  Defense counsel would better serve the interests of justice and their clients by filing proper motions for summary judgment rather than trying to "shoehorn" documents into a Rule 12(b)(6) motion.

[12]     Although Plaintiff does not expressly bring a claim for violation of the GRMA in his amended complaint, BANA and Northstar have construed his references to the GRMA as an attempt to bring claims under that statute.

AO 72A
(Rev.8/8
2)

misunderstanding:  Plaintiff's erroneous belief that BANA could not act as a servicer of his mortgage without holding the Security Deed." [Doc. 80 at 12].  BANA argues that Plaintiff's FDCPA claim fails because BANA is not a debt collector and Plaintiff fails to sufficiently allege a claim under 15 U.S.C. § 1692f(6).  [*Id.* at 14-18].  BANA argues that to the extent Plaintiff claims a defect in the foreclosure advertisement, it does not follow that the debt was not in default and that the FDCPA thus was violated.  [*Id.* at 17].  BANA argues that Plaintiff's claims related to fraud fail because (1) they are based on his claims under the GRMA, which fail as a matter of law, and (2) Plaintiff fails to comply with Rule 9(b), and thus fails to sufficiently state the elements of a fraud claim.  [*Id.* at 32-38].  BANA argues that Plaintiff's claim for civil conspiracy fails because there is no underlying tort.  [*Id.* at 38-39].  BANA argues that Plaintiff's claim of wrongful foreclosure fails because Plaintiff admits the property was not sold at the foreclosure sale advertised by McCalla, BANA has standing to foreclose, and Plaintiff failed to tender the amount due under the loan.  [*Id.* at 19-22].  Finally, BANA argues that any claim under the GRMA fails because that statute provides no private right of action.  [*Id.* at 30-32].

Plaintiff argues that the Assignment did not occur "according to the terms and conditions of the security deed and pursuant to the laws in the state of Georgia."

[Doc. 109 at 19].  Plaintiff argues that BANA lacks standing to enforce the Security Deed, and therefore it has violated the FDCPA.  [*Id.* at 21].  Plaintiff also alleges that because the Assignment did not take place before the foreclosure advertisement, that means that there was no default at the time of the advertisement, and the result is a violation of the FDCPA.  [Doc. 76 ¶ 31].  Plaintiff states that his claims for fraud and civil conspiracy are supported because no assignment of the Note to BANA actually occurred, and BANA's exhibits are "fraudulent documents." [*Id.* at 22-23].[13]  BANA's reply mainly concerns with why the Court could rely upon the documents attached to its motion to dismiss, which the Court has resolved in its favor *supra* at 29.[14]  BANA argues that none of Plaintiff's objections to the exhibits sufficiently presents a claim of fraud against BANA.  [Doc. 112 at 10].   BANA also argues that Plaintiff lacks standing to attack the validity of the Assignment because he is not a party to it. [*Id.* at 14].

---

[13]      Plaintiff also uses his response as a vehicle for discussion of his motion for an extension of time, his motions for issuance of subpoenas, his motion for injunction, certain "newly uncovered facts," and a bankruptcy proceeding in which he is involved. [*See generally* Doc. 109].  These topics are not relevant here.  In this document and in other documents discussed herein, where Plaintiff includes irrelevant information, the Court will focus on the relevant material only.

[14]      Pursuant to the December 27, 2012, Order [Doc. 117], the undersigned treats Section III of Doc. 112 as a reply by BANA.

31

2.      **Analysis**

a.      **FDCPA**

Plaintiff claims a violation of the FDCPA by BANA.  The FDCPA is intended

" 'to eliminate abusive debt collection practices by debt collectors, to ensure that those

debt collectors who refrain from using abusive debt collection practices are not

competitively disadvantaged, and to promote consistent State action to protect

consumers against debt collection abuses.' "  *LeBlanc v. Unifund CCR Partners*,

601 F.3d 1185, 1190 (11th Cir. 2010) (quoting 15 U.S.C. § 1692(e)).  To prevail on an

FDCPA claim, a plaintiff must establish that:

> (1) [he] [has] been the object of collection activity arising from a
> consumer debt; (2) the defendant attempting to collect the debt qualifies
> as a "debt collector" under the Act; and (3) the defendant has engaged in
> a prohibited act or has failed to perform a requirement imposed by the
> FDCPA.

*Buckley v. Bayrock Mortg. Corp.*, Civ. No. 1:09-cv-1387-TWT, 2010 WL 476673, at *6

(N.D. Ga. Feb. 5, 2010) (Thrash, J., adopting Vineyard, M.J.) (quoting *Beadle v.*

*Haughey*, No. Civ. 04-272-SM, 2005 WL 300060, at *3 (D.N.H. Feb. 9, 2005), and

*Russey v. Rankin*, 911 F. Supp. 1449, 1453 (D.N.M. 1995) (alteration in original)); *see*

*also McCorriston v. L.W.T., Inc.*, 536 F. Supp. 2d 1268, 1273 (M.D. Fla. 2008)).

The FDCPA's restrictions only apply to "debt collectors," who are defined as

"any person[s] who use[ ] any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collect[ ] or attempt[ ] to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6); *Harris v. Liberty Cmty. Mgt., Inc.*, --- F.3d ----, ----, 2012 WL 6604518, at *3 (11th Cir. Dec. 19, 2012).  In violation of the District Judge's prior Order, Plaintiff's amended complaint, [Doc. 76 at 12-13 (¶¶ 30-32)], does not demonstrate that BANA is a debt collector under the FDCPA.  He has made no attempt to demonstrate that BANA's "principal purpose" is "the collection of any debts" or that the business must "regularly collect[ ] or attempt[ ] to collect . . . debts." 15 U.S.C. § 1692a(6); *Birster v. Am. Home Mortg. Servicing, Inc.*, 481 Fed. Appx. 579, 583 (11th Cir. July 18, 2012) (defining "debt collector" under FDCPA).

On this ground alone, Plaintiff's FDCPA claim against BANA should be dismissed.  In the event the District Judge concludes that Plaintiff complied with the his Order, the undersigned evaluates the rest of the parties' arguments concerning Plaintiff's FDCPA claim against BANA.

To the extent that Plaintiff raises an FDCPA claim against BANA because BANA was only the loan servicer, that claim is without merit as a matter of law.

33

Again, the FDCPA only applies to debt collectors. *See Cliff v. Payco General American Credits, Inc.*, 363 F.3d 1113, 1123 (11th Cir. 2004) ("The FDCPA applies to debt collectors in general."). A "debt collector" is generally any person (1) who uses the mails or other instrumentalities in any business the principal purpose of which is the collection of any debts, or (2) who regularly collects or attempts to collect debts owed or due another. 15 U.S.C. § 1692a(6). A debt collector does not include any person collecting a debt owed or due to another if it "concerns a debt which was not in default at the time it was obtained by such person." 15 U.S.C. § 1692a(6)(F)(iii). Therefore, "consumer's creditors, a mortgage servicing company, or an assignee of a debt are not considered 'debt collectors,' [under the FDCPA] as long as the debt was not in default at the time it was assigned." *Reese v. JPMorgan Chase & Co.*, 686 F. Supp. 2d 1291, 1308 (S.D. Fla. 2009). The Eleventh Circuit has determined, moreover, that foreclosing on a home is not debt collection under § 1692g and has agreed that "an enforcer of a security interest, such as a [mortgage company] foreclosing on mortgages of real property . . . falls outside the ambit of the FDCPA except for the provisions of section 1692f(6)." *Warren v. Countrywide Home Loans, Inc.*, 342 Fed. Appx. 458, 460-61 (11th Cir. Aug. 14, 2009) (quoting *Chomilo v. Shapiro, Nordmeyer & Zielke, LLP*,

34

AO 72A
(Rev.8/8
2)

No. 06-3101, 2007 WL 2695795, *3-4 (D. Minn. Sept. 12, 2007)).[15]

Plaintiff alleges that BANA's collection of mortgage payments prior to the Assignment constitutes a violation of the FDCPA.  [Doc. 76 ¶ 31].  Plaintiff, however, acknowledges that BANA was identified as the servicer on notices mailed to him between May 2010 and September 2010.  [Doc. 76 ¶ 26].  BANA as servicer had the authority to collect mortgage payments as agent for the lender or note holder.

Next, to the extent that Plaintiff contends that BANA violated the FDCPA because BANA was not the proper party to foreclose upon Plaintiff's residence, Plaintiff's allegations do not cross *Iqbal*'s plausibility threshold.   The FDCPA prohibits the "[t]aking or threatening to take any nonjudicial action to effect

---

[15]    Title 15 U.S.C. § 1692f(6) makes it unlawful for a debt collector to use unfair or unconscionable means by engaging in the following conduct:

(6) Taking or threatening to take any nonjudicial action to effect dispossession or disablement of property if--

(A) there is no present right to possession of the property claimed as collateral through an enforceable security interest;

(B) there is no present intention to take possession of the property; or

(C) the property is exempt by law from such dispossession or disablement.

Plaintiff has not disputed that he defaulted on the mortgage, so § 1692f(6) is not violated if BANA is the proper party to attempt foreclosure.

35

dispossession or disablement of property if . . . there is no present right to possession of the property claimed as collateral through an enforceable security interest," even if the party attempting to foreclose is a mortgage company or servicer. 15 U.S.C. § 1692f(6)(A); *see also Minnifield v. Johnson & Freedman, LLC*, 448 Fed. Appx. 914, 915 (11th Cir. Oct. 28, 2011). However, the Assignment of the Security Deed together with the allegations of Plaintiff's Amended Complaint, in which he lumped BANA together with BAC Home Loans Servicing LP, Countrywide Home Loans Servicing, LP, and Countrywide Bank FSB, "through merger," establishes that BANA was authorized to seek foreclosure of Plaintiff's residence.

Further, to the extent that Plaintiff alleges that a defect in the foreclosure advertisement means that there was no default at the time of advertisement and that such results in a violation of the FDCPA, [Doc. 76 ¶ 31], this claim also fails. O.C.G.A. § 44-14-162(b) provides that "[t]he security instrument or assignment thereof vesting the secured creditor with the title to the security instrument shall be filed prior to the time of sale in the office of the clerk of the superior court of the county in which the real property is located." Thus, BANA only had to file the Assignment at any time before the time of sale. The Assignment was filed on September 10, 2010, [*see* Doc. 80-3], and Plaintiff's residence has not been foreclosed upon.

36

For these reasons, the undersigned **RECOMMENDS** that Plaintiff's claims against BANA under the FDCPA be **DISMISSED**.

### b.  Fraud and Fraudulent Misrepresentation

Under Georgia law, fraud may be actual or constructive.  O.C.G.A. § 23-2-51. To make a claim for actual fraud, a plaintiff must prove the following five elements: (1) a false representation made by the defendant; (2) the defendant's scienter (*i.e.*, the intent to deceive); (3) the defendant's intent to induce the plaintiff to act or refrain from acting in reliance upon the representation; (4) the plaintiff's justifiable reliance upon the representation; and (5) the plaintiff's damages directly and proximately caused by the reliance. *Harrouk v. Fierman*, 291 Ga. App. 818, 822, 662 S.E.2d 892, 895 (2008) (citations omitted).  On the other hand, "[c]onstructive fraud exists where defendant acted, or failed to act, 'contrary to legal or equitable duty, trust, or confidence justly reposed, which is contrary to good conscience and operates to the injury of another.' " *Garbutt v. Southern Clays, Inc.*, 894 F. Supp. 456, 461 (M.D. Ga. 1995) (quoting *Macon-Bibb County Hosp. Auth. v. Georgia Kaolin Co.*, 646 F. Supp. 90, 93 (M.D. Ga. 1986), *aff'd*, 817 F.2d 98 (11th Cir. 1987) (per curiam) (quoting O.C.G.A. § 23-2-51(b)).  More specifically:

> [T]he essential difference between actual (whether through positive

misrepresentation or nondisclosure of a material fact) and constructive
fraud is the intent element.  In the former, plaintiff must prove intent to
succeed; in the latter there is the presumption of fraud, without the
showing of intent, because of the relation between the parties.

*Garbutt*, 894 F. Supp. at 461 (citation omitted).  Additionally, "[m]isrepresentation of

a material fact, made willfully to deceive or recklessly without knowledge and acted

on by the opposite party or made innocently and mistakenly and acted on by the

opposite party, constitutes legal fraud."  O.C.G.A. § 23-2-52.

Rule 9(b) of the Federal Rules of Civil Procedure requires that when fraud is

alleged, "a party must state with particularity the circumstances constituting fraud,"

Fed. R. Civ. P. 9(b), and therefore claims of fraud are an exception to the

notice-pleading requirements that generally apply to federal civil claims.  The Eleventh

Circuit has noted that "[p]articularity means that 'a plaintiff must plead facts as to time,

place, and substance of the defendant's alleged fraud, specifically the details of the

defendant['s] allegedly fraudulent acts, when they occurred, and who engaged in

them.' "  *United States ex rel. Atkins v. McInteer*, 470 F.3d 1350, 1357 (11th Cir. 2006)

(alteration in original) (internal quotation marks omitted) (quoting *United States ex rel.

Clausen v. Lab. Corp. of Am.*, 290 F.3d 1301, 1310 (11th Cir. 2002)); *see also Corsello

v. Lincare, Inc.*, 428 F.3d 1008, 1012 (11th Cir. 2005).

38

Since Plaintiff is proceeding *pro se*, his complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).  The particularity requirement of Rule 9(b), however, still applies to *pro se* litigants, even though courts generally will allow *pro se* litigants some leniency.  *See, e.g., Keane v. Keane*, No. 08-cv-10375, 2009 WL 1490686, *5 (S.D.N.Y. May 27, 2009) (noting that while *pro se* pleadings are afforded more leniency, "they are still subject to dismissal where the pleadings fail to comply with Rule 9(b)").

Here, Plaintiff has not satisfactorily pleaded the elements of a fraud claim under Georgia law.  There is no allegation regarding the time or place of the fraud, nor are there details of BANA's allegedly fraudulent acts.  Plaintiff's allegations that BANA "knew or should have known" that Northstar had misrepresented itself as a "lender" in violation of the GRMA, [Doc. 76 ¶ 48], fail to sufficiently allege fraud on the part of BANA. Moreover, the documents incorporated by reference into the amended complaint conclusively demonstrate that Plaintiff understood that (1) MERS was a nominee of Northstar, the Lender, (2) MERS was an assignee of the Security Deed as of June 12, 2007, and (3) MERS, and its successors and assigns, could foreclose upon Plaintiff's residence if he did not keep his promises (i.e., pay the mortgage) under the

39

note and the security deed.   Thus, to the extent that Plaintiff claims that BANA somehow defrauded him because it was not the proper entity to attempt to foreclose, and that Northstar could not assign its rights to enforce the Note and Security Deed in August 2010, the documents incorporated by reference into Plaintiff's amended complaint conclusively demonstrate the insufficiency of these allegations.  For the same reasons, Plaintiff's allegation that BANA's working with McCalla to advertise the foreclosure sale does not sufficiently allege fraud.  [*Id.* at ¶ 51].

In addition, there is no constructive fraud because Plaintiff has not alleged a confidential relationship between BANA and Plaintiff, and in any event, under Georgia law there is no confidential relationship between a mortgagor and mortgagee, or generally between a creditor and debtor and a mortgagee/creditor owes no fiduciary duty to the mortgagor/debtor.  *See Dollar v. NationsBank of Ga.*, *N.A.*, 244 Ga. App. 116, 117, 534 S.E.2d 851 (2000); *Gammage v. State*, 92 Ga. App. 235, 235, 88 S.E.2d 174, 176 (1955).

Moreover, although Plaintiff contends that the Assignment was fraudulent, [*see* Doc. 76 ¶ 51], as noted, Plaintiff lacks standing to challenge the Assignment.  Even if Plaintiff had standing to challenge the Assignment, he does not explain how the Assignment was fraudulent, other than to allege that all three

40

Defendants drafted it and that the execution date of August 23, 2010, was "more than 6 months after the State of Georgia had revoked a mortgage license held by Northstar." [*Id.*].  As previously noted, the documents incorporated by reference conclusively demonstrate that Northstar assigned its rights, and Plaintiff acknowledged the assignment, to MERS years before August 23, 2010.

For these reasons, the undersigned **RECOMMENDS** that Plaintiff's claims against BANA for fraudulent misrepresentation and fraud be **DISMISSED**.

### c.    Civil conspiracy

Plaintiff also alleges BANA participated in a civil conspiracy.  "To recover damages for a civil conspiracy claim, a plaintiff must show that two or more persons, acting in concert, engaged in conduct that constitutes a tort.   Absent the underlying tort, there can be no liability for civil conspiracy."  *J. Kinson Cook of Ga., Inc. v. Heery/Mitchell*, 284 Ga. App. 552, 560, 644 S.E.2d 440, 448 (2007) (internal quotation marks omitted).  There is no civil liability for a conspiracy, only for the overt acts of the conspirators.  *U.S. Anchor Mfg. v. Rule Indus.*, 264 Ga. 295, 297, 443 S.E.2d 833, 835 (1994).  Thus, there is only liability where a tort is committed against the plaintiff and results in damages.  *Savannah Coll. of Art & Design, Inc. v. Sch. of Visual Arts*, 219 Ga. App. 296, 297, 464 S.E.2d 895, 896 (1995).  "The essential element of the

41

alleged conspiracy is proof of a common design establishing 'that two or more persons in any manner, either positively or tacitly, arrive at a mutual understanding as to how they will accomplish an unlawful design.' " *Tyler v. Thompson*, 308 Ga. App. 221, 225, 707 S.E.2d 137, 141 (2011) (quoting *Parrish v. Jackson W. Jones, P.C.*, 278 Ga. App. 645, 649, 629 S.E.2d 468, 472 (2006)).

According to Plaintiff, the torts underlying his civil conspiracy claim are fraudulent misrepresentation and fraud. The undersigned has already discussed the failure of Plaintiff's fraud-related claims against BANA. Because the undersigned **RECOMMENDS** that these claims be **DISMISSED**, a conspiracy claim based on the same must also fail. *See Parrish*, 278 Ga. App. at 650, 629 S.E.2d at 472 ("[T]o the extent that [plaintiff's] claim of a conspiracy is dependent upon the viability of the fraud and breach of contract claims, it too must fail."). Accordingly, the undersigned **RECOMMENDS** that Plaintiff's civil conspiracy claim against BANA be **DISMISSED**.

### d.   Wrongful Foreclosure

Although Plaintiff's amended complaint includes a claim for wrongful foreclosure, it also states as follows: "Plaintiff admits that the residential property described within this complaint was not sold at any of the pending foreclosure sales

42

advertised by McCalla Raymer, LLC c/o Bank of America, N.A." Because no foreclosure has taken place, a claim for wrongful foreclosure is not possible. *See Watkins v. Beneficial, HSBC Mortgage*, No. 1:10-cv-1999-TWT-RGV, 2010 WL 4318898, at *5 (N.D. Ga. Sept. 2, 2010) ("Because Beneficial has not proceeded with the foreclosure of the subject property, plaintiff 'cannot prove a claim for wrongful foreclosure.' " (citation omitted)). Plaintiff appears to acknowledge that this claim is not possible, because, rather than dwell on the claim of wrongful foreclosure, he goes on to request that the Court grant injunctive relief preventing a foreclosure at any time in the future. [Doc. 76 ¶ 40].[16]

In addition, Plaintiff has not alleged that he is current on his loan payments. [*See* Doc. 76; Doc. 103 at 5; Doc. 104 at 7]. Failure to make the proper loan payments defeats any wrongful foreclosure claim. *See Warque v. Taylor, Bean, & Whitaker Mortg. Corp.*, Civil Action No. 1:09-CV-1906-ODE-CCH, 2010 U.S. Dist. LEXIS 142129, at *14-15 (N.D. Ga. July 30, 2010) (Hagy, M.J.) (finding causation not established where plaintiff had failed to make payments on loan (citing *Heritage Creek Dev. Corp. v. Colonial Bank*, 268 Ga. App. 369, 370-71,

---

[16] The request for injunctive relief, which also was made in two subsequent filings, [Docs. 98 and 101], is addressed *infra*.

601 S.E.2d 842, 845 (2004)) (finding that plaintiff's injury was "solely attributable to its own acts or omissions both before and after the foreclosure" because it defaulted on the loan payments, failed to cure the default, and did not bid on the property at the foreclosure sale)), *adopted at* 2010 U.S. Dist. LEXIS 1421119 (N.D. Ga. Aug. 18, 2010) (Evans, J.)); *cf. Taylor v. Wachovia Mortg. Corp.*, No. 1:07-cv-2671-TWT, 2009 WL 249353, at *5 n.6 (N.D. Ga. Jan. 30, 2009) (Thrash, J., adopting Vineyard, M.J.) ("Plaintiff has not provided any evidence showing that he tendered the full amount of the loan or any portion thereof.  Thus, under Georgia law, plaintiff has no standing to bring an action to enjoin the foreclosure sale.").

For these reasons, the undersigned **RECOMMENDS** that Plaintiff's claims for wrongful foreclosure against BANA be **DISMISSED**.

### e.      GRMA

Although Plaintiff does not expressly raise a claim under the GRMA, BANA addresses Plaintiff's references to this statute in the amended complaint.  BANA argues that because the GRMA does not provide a private right of action, Plaintiff cannot bring a claim pursuant to this statute. [Doc. 80 at 30-32].  Although the undersigned is unaware of any published Georgia case that has reached this conclusion, other Judges in this District have concluded that the GRMA does not provide a private right of

44

action.  *See, e.g.*, *Reese v. Wachovia Bank, N.A.*, No. 1:08-cv-3461, 2009 U.S. Dist. LEXIS 94802 at *5-8 (N.D. Ga. Feb. 23, 2009) (Tidwell, J.) (finding that the GRMA does not provide for a private right of action); *cf. Anthony v. Am. Gen. Fin. Servs., Inc.*, 287 Ga. 448, 454-60, 697 S.E.2d 166, 171-75 (2010) (holding that O.C.G.A. § 45-17-11 did not authorize a private right of action and providing a detailed explanation as to why, which is consistent with the reasoning in *Reese*, *id.*).  To the extent that Plaintiff may have intended to allege claims under the GRMA, such claims fail because Plaintiff has not shown that the statute provides a private right of action.

For these reasons, the undersigned **RECOMMENDS** that any claims Plaintiff has attempted to raise against BANA under the GRMA be **DISMISSED**.

The undersigned now turns to the motion to dismiss by McCalla.

### D.    McCalla's Motion to Dismiss, [Doc. 81]

Plaintiff's claims against McCalla are violation of the FDCPA, fraud, fraudulent misrepresentation, wrongful foreclosure, and civil conspiracy.

### 1.    Arguments of the Parties

McCalla argues that Plaintiff's claim against it under the FDCPA fails because Plaintiff fails to allege that McCalla is a "debt collector" within the meaning of that statute.  [Doc. 81-1 at 5-6].  In addition, to the extent that Plaintiff claims that McCalla

45

had no right to run a foreclosure advertisement because the assignment had not yet been recorded, McCalla argues that this claim fails because a recorded assignment is not a prerequisite to running a foreclosure advertisement, and there has been no foreclosure sale, which renders the issue moot.  [*Id.* at 6].  As to the claim for fraudulent representation, McCalla argues that Plaintiff fails to establish the required element of justifiable reliance.  [*Id.* at 7].  McCalla also argues that Plaintiff has not sufficiently pleaded fraud, [*id.* at 8-9], and that there is no underlying tort to support a claim for civil conspiracy.  [*Id.* at 10].

In response, Plaintiff argues that the "purported description of the chain of custody, Security Deed Assignments, and ownership of 'The Note' as described by counsel for McCalla Raymer, LLC is not accurate."  [Doc. 113 at 6].  Plaintiff argues that when McCalla "advertised the proposed non-judicial foreclosure legal ads, they were fully aware of the fact that within 30 to 90 days of the June 12th 2007 mortgage closing" that Northstar sold the loan, the Note, and all secured interest to an entity other than BANA "or any of its known affiliated named entities."  [*Id.* ].  Plaintiff also argues that on August 23, 2010, McCalla fraudulently drafted and filed documents related to the Assignment and that "this information . . . is knowingly false, fraudulent and solely for the purpose of supporting their efforts to both violate . . . the FDCPA and also in

46

support of their continuous efforts to fraudulently conduct a non-judicial foreclosure."

[*Id.* at 6-7].

McCalla did not file a reply.

### 2.   Analysis

#### a.   FDCPA

The relevant law regarding the FDCPA is discussed *supra* at 32-35.  To reiterate briefly, the FDCPA only applies to debt collectors.  *See Cliff*, 363 F.3d at 1123. Foreclosing on a home is not debt collection under § 1692g, and "an enforcer of a security interest, such as a [mortgage company] foreclosing on mortgages of real property . . . falls outside the ambit of the FDCPA except for the provisions of section 1692f(6)."  *Warren*, 342 Fed. Appx. at 460-61.

In his explanation of why McCalla is a debt collector within the meaning of the FDCPA, Plaintiff states that McCalla was "aware of the fact that no assignment of a security deed, whether valid or invalid, had taken place prior to the advertising of the pending foreclosure sale and based on that, the debt advertised could not be considered to be in default at the time of the advertisements."  [Doc. 76 at ¶ 38].  Plaintiff also alleges that McCalla mailed letters demanding payments for an alleged debt to Bank of America, N.A. in the amount of $155,000.00 and that it advertised the "pending

AO 72A
(Rev.8/8
2)

foreclosure" in the *Daily Report*.  [*Id.* at ¶¶ 34-35].[17]   Plaintiff did not attach to his Amended Complaint a copy of this letter from McCalla; however, the Court notes that a copy of the first page of the letter was attached to the initial Complaint.  [*See* Doc. 1-1].

As discussed above, any claim under the FDCPA premised on the timing of the Assignment and the foreclosure advertisement fails.  Georgia law requires only that the assignment be filed prior to the sale.  O.C.G.A. § 44-14-162(b).  Here, the Assignment has been filed, and in any event, it is undisputed that Plaintiff's property has not been sold at a non-judicial foreclosure sale.

As for the letters mailed to Plaintiff by McCalla, the Court considers the copy attached to the initial Complaint.  [Doc. 1-1]. On its face, this first page of the June 10, 2010, letter to Plaintiff, which informs him of the impending foreclosure sale, contains a demand for payment of the outstanding balance of the mortgage and the following admonition:  "This is an attempt to collect a debt. . . ."  [Doc. 1-1].  As a result, the

---

[17]     Although Plaintiff technically did not comply with the District Judge's order requiring him to specifically state why McCalla qualifies as a debt collector under the FDCPA, construing the Amended Complaint liberally, Plaintiff's allegation that McCalla sent communications demanding payment of the $155,000 mortgage arguably satisfies the Court's order and the statute.  Because the undersigned concludes Plaintiff's FDCPA claims against McCalla fail for other reasons, an in depth discussion of whether he complied with the District Judge's Order is not necessary.

48

letter can be said to qualify as a "dual purpose" communication which, if false or misleading, could give rise to liability under the FDCPA. *Reese v. Ellis, Painter, Ratterree & Adams, LLP*, 678 F.3d 1211, 1217 (11th Cir. 2012). Therefore, the Court must determine whether Plaintiff raises a plausible claim that the communication at issue was false or misleading under the FDCPA.

Plaintiff alleges that the FDCPA was violated because Assignment was fraudulent. As noted, Plaintiff lacks standing to challenge the legality of the Assignment. *See supra* at 26-27; *see also Peterson*, 2012 WL 961211, at *10. Even if Plaintiff had standing to challenge the Assignment, however, he does not allege sufficient facts to support his claim that the Assignment was fraudulent, as discussed *supra* at 23-27.

For these reasons, the undersigned **RECOMMENDS** that Plaintiff's claim for violation of the FDCPA by McCalla be **DISMISSED**.

### b.      Fraud and Fraudulent Misrepresentation

Again, Rule 9(b) of the Federal Rules of Civil Procedure requires that fraud be pleaded with particularity. Here, Plaintiff's allegation that McCalla advertised the foreclosure sale "based upon the fraudulently misrepresented documents" does not sufficiently allege fraud. [Doc. 76 at ¶ 51]. Nor does Plaintiff's challenge to the

AO 72A
(Rev.8/8
2)

Assignment sufficiently allege or make out a claim for fraud.  [*Id.*].  Moreover, as discussed *supra* at 26-27, Plaintiff does not have standing to challenge the Assignment.

As a result, the undersigned **RECOMMENDS** that Plaintiff's fraud claims against McCalla  be **DISMISSED**.

### c.    Civil Conspiracy

Because the undersigned **RECOMMENDS** that these fraud-related claims be **DISMISSED**, a conspiracy claim based on the same must also fail.  *See Parrish*, 278 Ga. App. at 650 ("[T]o the extent that [plaintiff's] claim of a conspiracy is dependent upon the viability of the fraud and breach of contract claims, it too must fail."). Therefore, the undersigned **RECOMMENDS** that Plaintiff's civil conspiracy claim against McCalla be **DISMISSED**.

### d.    Wrongful Foreclosure

McCalla does not address wrongful foreclosure, perhaps because Plaintiff admits that there has been no foreclosure sale.  Without a foreclosure sale, Plaintiff's claim for wrongful foreclosure fails.  *See Watkins*, 2010 WL 4318898, at *5.  Additionally, Plaintiff's failure to make the proper loan payments defeats his wrongful foreclosure claim.  *See Warque*, 2010 U.S. Dist. LEXIS 142129, at *14-15.  Accordingly, the undersigned **RECOMMENDS** that any claim for wrongful foreclosure against

50

McCalla be **DISMISSED**.

**III.    Northstar's Motion to Dismiss and Motion for Partial Summary Judgment, [Doc. 85]**

    **A.    Preliminary matters**

The Court notes two procedural deficiencies in Northstar's motions.  First, Northstar filed its motion to dismiss and for partial summary judgment on March 22, 2012, after having filed an answer to the Amended Complaint on February 28, 2012. A Rule 12(b)(6) motion to dismiss for failure to state a claim must be filed before a responsive pleading is filed.  *See* Fed. R. Civ. P. 12(b); *Pfister v. Arceneaux*, 376 F.2d 821, 822-23 (5th Cir. 1966); *Garrett v. Unum Life Ins. Co. of Amer.*, 427 F. Supp. 2d 1158, 1160 (M.D. Ga. 2005).  When a defendant files a Rule 12(b)(6) motion after filing an answer, however, a court can exercise its discretion and treat the motion as a Rule 12(c) motion for judgment on the pleadings.  *Filo America, Inc. v. Olhoss Trading Co., L.L.C.*, 321 F. Supp. 2d 1266, 1267 (M.D. Ala. 2004); *see also Schy v. Susquehanna Corp.*, 419 F.2d 1112, 1115 (7th Cir. 1970) ("A motion to dismiss made after the filing of an answer serves the same function as a motion for judgment on the pleadings . . .").  For the sake of efficiency, the Court chooses to treat Northstar's motion to dismiss as a motion for judgment on the pleadings.

51

Second, Northstar's motion for partial summary judgment does not comply with N.D. Ga. R. 56.1B(1). Nor does Plaintiff's response to the motion for partial summary judgment comply with Local Rule 56.1B(2). These rules describe the proper form for motions for summary judgment and responses thereto. In moving for summary judgment, a movant is required to include a separate, concise, numbered statement of the material facts to which the movant contends there is no genuine issue to be tried. *See* N.D. Ga. R. 56.1B(1). Northstar and Plaintiff have not followed the prescribed format. However, "the court, in its discretion, may waive a Local Rule." *Edwards v. Shalala*, 846 F. Supp. 997, 998 n.2 (N.D. Ga. 1994). The undersigned chooses to forgive the failures of Northstar and Plaintiff, and resolve the pending motions on the merits. *See Reese v. Herbert*, 527 F.3d 1253, 1270 (11th Cir. 2008) (recognizing that the District Court has "broad discretion" to overlook noncompliance with local rules, specifically Rule 56.1).

The Court now turns to Northstar's motions. Plaintiff's claims against Northstar are fraudulent mispresentation, fraud, civil conspiracy, and wrongful foreclosure. Northstar also construes Plaintiff's references to the GRMA as an attempt to bring a

52

claim under that statute.[18]  Northstar moves for partial summary judgment on the claims of fraudulent misrepresentation and fraud.  Northstar moves to dismiss the claims for civil conspiracy, wrongful foreclosure, and violation of the GRMA.  The Court first considers Northstar's motion for partial summary judgment, then it considers the motion to dismiss, construed as a motion for judgment on the pleadings.

**B.      Northstar's Motion for Partial Summary Judgment [Doc. 85]**

**1.      Summary Judgment Standard**

"Summary judgment is proper where 'the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to summary judgment as a matter of law.' " *Tana v. Dantanna's*, 611 F.3d 767, 772 (11th Cir. 2010) (quoting Fed. R. Civ. P. 56(c)). The movant carries the initial burden of "informing the court of the basis for its motion and of identifying those materials that demonstrate the absence of a genuine issue of

---

[18]      Plaintiff also appears to have inadvertently included Northstar in his claim for relief regarding the FDCPA.  Out of an abundance of caution, Northstar construed Plaintiff's apparent editing error as a claim against it under the FDCPA. [*See* 85-1 at 22-25].  To the extent that Plaintiff has, however inadvertently, raised such a claim, the undersigned **RECOMMENDS** that the District Court **GRANT** judgment on the pleadings in favor of Northstar as to any claim under the FDCPA.  There is no allegation or evidence in the record that Northstar qualifies as a "debt collector" under the FDCPA.

AO 72A
(Rev.8/8
2)

material fact." *Rice-Lamar v. City of Fort Lauderdale*, 232 F.3d 836, 840 (11th Cir. 2000) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  A fact is "material" if it "might affect the outcome of the suit under the governing law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  "Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991).

The nonmovant is then required "to go beyond the pleadings" and present competent evidence in the form of affidavits, depositions, admissions, and the like, designating "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324.  "The mere existence of a scintilla of evidence" supporting the nonmovant's case is insufficient to defeat a motion for summary judgment. *Anderson*, 477 U.S. at 252.  "[F]acts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts."  *Scott v. Harris*, 550 U.S. 372, 380 (2007).  "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."  *Id.*  If the record does not blatantly contradict the

54

nonmovant's version of events, the court must determine "whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented."  *See Anderson*, 477 U.S. at 252; *see also EPL Inc. v. USA Fed. Credit Union*, 173 F.3d 1356, 1362 (11th Cir. 1999); *Duke v. Cleland*, 884 F. Supp. 511, 514 (N.D. Ga. 1995) (Freeman, J.). If the record presents disputed issues of fact, the Court may not decide them; rather, it must deny the motion and proceed to trial.  *FindWhat Inv. Grp*,  658 F.3d at 1307 (citing *Tullius v. Albright*, 240 F.3d 1317, 1320 (11th Cir. 2001)).

## 2.        Background and Arguments of the Parties

In his Amended Complaint, Plaintiff alleges that Northstar misrepresented itself as a "Mortgage Lender" in the June 12, 2007, Note.  [Doc. 76 ¶ 15].  Plaintiff states that he realized in August 2010 that Northstar did not possess a license as a Mortgage Lender in Georgia, but was instead a "Mortgage Loan Originator."  [*Id.*].  Plaintiff alleges that Northstar's "Loan Originator License" was revoked prior to the August 23, 2010, Assignment.  [Doc. 76 at ¶ 21].  Plaintiff's references to the GRMA relate to his assertions that Northstar was not properly licensed by the Georgia Department of Banking and Finance.

In its motion, Northstar argues that Plaintiff's fraudulent misrepresentation claim fails because Plaintiff has presented no evidence of any factual misrepresentation made

55

by Northstar at the time Plaintiff executed the Security Deed and Note in June 2007. [Doc. 85-1 at 12-13].   Northstar states that its Annual Mortgage Lender License with the Georgia Department of Banking and Finance was in effect from November 8, 2005, through and including December 31, 2009. [Doc. 85-1 at 14; *see* Doc. 85-2].  Northstar argues that the plain language of the Security Deed and Note fail to make any representations about the kind of license Northstar may possess, and that even if it did misrepresent itself, such misrepresentation regarding Northstar's license status is immaterial to the agreement between Plaintiff and Northstar regarding the repayment of the loan.  [*Id.* at 13].  Even if Northstar misrepresented itself as a licensed mortgage lender, it argues, Plaintiff has not shown that he was justified in relying on Northstar's misrepresentation and that Plaintiff suffered damages as a result.  [*Id.* at 16-17]. Northstar argues that Plaintiff's fraud claim fails because Plaintiff has failed to plead fraud with particularity.  [*Id.* at 18].

Plaintiff argues that Northstar was not properly identified as the lender and that his transaction with Northstar "was conducted outside of the scope of the license." [Doc. 85 at 2].   Plaintiff argues that actually Northstar should have held a

56

"Correspondent Lender" license.  [Doc. 85 at 3].[19]

Northstar did not file a reply.

### 3.    Analysis

The relevant law regarding fraud and fraudulent misrepresentation is discussed *supra* at 37-38.  Briefly, a claim for actual fraud requires the following elements: (1) a false representation made by the defendant; (2) the defendant's scienter (*i.e.*, the intent to deceive); (3) the defendant's intent to induce the plaintiff to act or refrain from acting in reliance upon the representation; (4) the plaintiff's justifiable reliance upon the representation; and (5) the plaintiff's damages directly and proximately caused by the reliance.  *Harrouk*, 291 Ga. App. at 822, 662 S.E.2d at 895.  Constructive fraud requires no showing of intent, because of the relation between the parties.  *Garbutt*, 894 F. Supp. at 461.  "Misrepresentation of a material fact, made willfully to deceive or recklessly without knowledge and acted on by the opposite party or made innocently and mistakenly and acted on by the opposite party, constitutes legal fraud."  O.C.G.A. § 23-2-52.

---

[19]    In his response, Plaintiff also requests that the Court certify two questions regarding licensing to the "State of Georgia Banking and Finance Division."  [Doc. 97 at 4].  The undersigned **RECOMMENDS** that the District Court **DECLINE** to do so because the information sought is irrelevant and there is no authority for certifying a question to a Georgia State Agency.

AO 72A
(Rev.8/8
2)

Plaintiff's assertions that Northstar did not possess a "Loan Originator License" or a "Correspondent Lender" license are insufficient to support a claim of fraud or fraudulent misrepresentation. Regardless of the type of license Northstar had or should have had in 2007, Plaintiff has presented no facts to show justifiable reliance or damages, as required. *See Harrouk*, 291 Ga. App. at 822, 662 S.E.2d at 895. Simply stated, Plaintiff received the loan proceeds which enabled him to purchase or refinance his residence, so he has shown no detriment even if Northstar was not properly licensed. Second, the proximate cause of Plaintiff's damages is not Northstar's alleged non-licensed status, but Plaintiff's failure to pay back the loan.

Nor has Plaintiff pleaded fraud with particularity, as required by Federal Rule of Civil Procedure 9(b). Plaintiff does not allege any specifics such as when the allegedly fraudulent acts occurred or who engaged in them. *See McInteer*, 470 F.3d at 357. Plaintiff has not presented specific facts showing that there is a genuine issue for trial. *See Celotex*, 477 U.S. at 324.

For these reasons, the undersigned **RECOMMENDS** that the District Court **GRANT** Northstar's motion for partial summary judgment as to the fraud-related claims.

58

**C.      Northstar's Motion to Dismiss, [Doc. 85]**

The claims remaining are for civil conspiracy, wrongful foreclosure, and violation of the GRMA.  Northstar asks the Court to dismiss these claims.  As noted, the undersigned construes this motion as one for judgment on the pleadings.

A Rule 12(c) "motion for judgment on the pleadings is subject to the same standard as is a Rule 12(b)(6) motion to dismiss."  *WESI, LLC v. Compass Environmental, Inc.*, 509 F. Supp. 2d 1353, 1357 (N.D. Ga. 2007) (quoting *Provident Mut. Life Ins. Co. of Philadelphia v. City of Atlanta*, 864 F. Supp. 1274, 1278 (N.D. Ga. 1994)); *see also Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1295 n.8 (11th Cir. 2002) (stating that the standard under Rule 12(b)(6) and Rule 12(c) is the same).  Thus, a court is authorized to grant a Rule 12(b)(6) motion to dismiss or Rule 12(c) motion for judgment on the pleadings if a plaintiff "fail[s] to state a claim upon which relief can be granted."  *See* Fed. R. Civ. P.  12(b)(6), 12(c), 12(h)(2)(B).

**1.      Civil Conspiracy**

The relevant law regarding civil conspiracy is discussed *supra* at 41-42. Because the undersigned **RECOMMENDS** that the District Court **GRANT** summary judgment to Northstar as to the fraud-related claims against it, a conspiracy claim based

on the same must also fail. *See Parrish*, 278 Ga. App. at 650 ("[T]o the extent that [plaintiff's] claim of a conspiracy is dependent upon the viability of the fraud and breach of contract claims, it too must fail."). As a result, the undersigned **RECOMMENDS** that judgment on the pleadings be **GRANTED** as to Plaintiff's civil conspiracy claim against Northstar.

### 2.      Wrongful Foreclosure

As discussed above, Plaintiff admits that there has been no foreclosure sale. Without a foreclosure sale, Plaintiff's claim for wrongful foreclosure fails. *See Watkins*, 2010 WL 4318898, at *5. Additionally, Plaintiff's failure to make the proper loan payments defeats his wrongful foreclosure claim. *See Warque*, 2010 U.S. Dist. LEXIS 142129, at *14-15. Accordingly, the undersigned **RECOMMENDS** that judgment on the pleadings be **GRANTED** as to Plaintiff's wrongful foreclosure claim against Northstar.

### 3.      Violation of the GRMA

Although Plaintiff does not expressly raise a claim under the GRMA, Northstar addresses Plaintiff's references to this statute in the amended complaint. [Doc. 85-1 at 10-12]. Northstar argues that because the GRMA does not provide a private right of action, Plaintiff cannot bring a claim pursuant to this statute. As noted, the GRMA

60

does not provide a private right of action.  *See, e.g.*, *Reese*, 2009 U.S. Dist. LEXIS 94802 at *5-8.  To the extent that Plaintiff may have intended to allege claims under the GRMA, such claims fail because Plaintiff has not shown that the statute provides a private right of action.

Therefore, the undersigned **RECOMMENDS** that judgment on the pleadings be **GRANTED** as to any claims Plaintiff has attempted to raise against Northstar under the GRMA.

## IV.    Declaratory Relief

Plaintiff seeks a declaratory judgment directing that the Security Deed and Assignment be removed from the residential property records and that the "Residential Mortgage Contract" be ordered null and void.  [Doc. 76 ¶ 53].  The requested relief would be inappropriate because of the recommended disposition of Plaintiff's other claims.  The undersigned therefore **RECOMMENDS** that Plaintiff's request for declaratory relief be **DENIED**.

## V.    Motion for Injunctive Relief, [Docs. 98 and 101]

Plaintiff filed a motion for injunctive relief, [Doc. 98], on June 14, 2012, seeking

61

to enjoin the foreclosure sale of the property on July 3, 2012.[20]  McCalla and BANA

responded and reported that the foreclosure sale had been tentatively rescheduled for

September 4, 2012, "subject to further postponement depending on the posture of this

case at that time, or in compliance with any future orders or judgments by the Court that

suggest or require such delay." [Doc. 99 at 1-2; *see* Doc. 100].  Thereafter, on June 25,

2012,  Plaintiff filed a motion, [Doc. 101], requesting that the Court "construe and

convert his emergency injunctive motion now as one being filed on a non-emergency

basis." [Doc. 101 at 1].  Defendants BANA and McCalla responded in opposition.

[Docs. 103, 104].[21]  Plaintiff filed a reply brief.  [Doc. 107].

      Because the scheduled foreclosure was postponed and because Plaintiff seeks to

recast the motion for a different purpose, the undersigned **RECOMMENDS** that the

motion for injunctive relief, [Doc. 98], be **DENIED AS MOOT**.

      As for the motion to "convert" the motion for injunctive relief to a "non-

---

[20]    Plaintiff also raised his request for injunctive relief in his amended complaint, [Doc. 76 ¶ 41 *et seq.*].

[21]    Although the docket indicates that Northstar also filed a response in opposition, [Doc. 108], that document in substance is actually a response in opposition to Plaintiff's motion to issue a subpoena to Northstar, and it is entitled "Defendant Northstar Mortgage Group LLC's Response in Opposition to Plaintiff's Response to the Bank Defendant' Memorandum in Opposition."

AO 72A
(Rev.8/8
2)

emergency" motion for injunctive relief, [Doc. 101], Plaintiff indicates therein that "[t]he issues described within plaintiff's emergency injunction motion also appl[y] to any subsequently rescheduled or proposed future foreclosure proceedings anticipated by or proposed by the defendants." [Doc. 101 at ¶ 4].  The undersigned therefore construes this motion, [Doc. 101], as a motion seeking a temporary restraining order ("TRO") to enjoin a potential foreclosure sale.

The initially scheduled foreclosure of July 3, 2012, did not occur, and it appears that the tentatively scheduled September 2012 foreclosure did not occur either. [Doc. 76 at ¶ 40; Doc. 103 at 2; Doc. 104 at 1-2.]  To the Court's knowledge,  another date has not been proposed.

## A.      Arguments of the Parties

In support of his motion, Plaintiff argues that although the scheduled foreclosure has been postponed, "the issues described within plaintiff's emergency injunction motion also appl[y] to any subsequently rescheduled or proposed future foreclosure proceedings anticipated by or proposed by the defendants."  [Doc. 101 at 2 ¶ 4]. Plaintiff questions whether BANA is the secured creditor.  [*Id.* at 1 ¶ 2].

In response to Plaintiff's motion, [Doc. 101], BANA argues that (1) Plaintiff's June 2012 motion to enjoin the tentatively scheduled September 2012 foreclosure sale

AO 72A
(Rev.8/8
2)

is not ripe, and therefore a hearing is unnecessary, (2) Plaintiff's motion should be denied because he has failed to establish any of the requirements for the entry of a temporary restraining order and Plaintiff has not tendered security as required by Federal Rule of Civil Procedure 65(c), (3) Plaintiff's motion for a hearing in connection with his subpoenas is premature and must be denied,[22] and (4) Plaintiff's attempt to oppose BANA's motion to dismiss at a hearing is improper and must be denied because Plaintiff has failed to respond.[23] [Doc. 103]. McCalla argues (1) that Plaintiff's motion to enjoin the tentatively scheduled September 2012 foreclosure sale is not ripe and should be denied, and (2) that Plaintiff is not entitled to equitable relief because he failed to make tender of the full accelerated amount. [Doc. 104].

Plaintiff argues in reply that BANA was not the proper party to initiate the foreclosure. [Doc. 107 at 1 ¶ 1]. Plaintiff further argues that his motions for injunctive relief are not premature because the "bank defendants" "have absolutely stated that they do intend to conduct a foreclosure against the property in September 2012 pending further orders from the Court." [*Id.* at 1 ¶ 5].

---

[22]    Plaintiff's motions for subpoenas [Docs. 83, 93] are discussed in a separate order, [Doc.117].

[23]    The argument regarding failure to respond is moot because Court has since granted the extension of time for response sought by Plaintiff. [Doc. 117].

64

**B.     Analysis**

Before reaching the substantive issues Plaintiff's motion presents, the Court notes that two deficiencies cast serious doubt on Plaintiff's ability to contest the potential foreclosure proceedings in this case.  First, it appears that Plaintiff cannot enjoin the foreclosure proceedings because it is not clear that he has paid the full amount necessary to bring the Note current.  [*See* Doc. 76; Doc. 103 at 5; Doc. 104 at 7].  Under Georgia law, a plaintiff is entitled to equitable relief from a foreclosure only if he pays or tenders the amount due on the mortgage.  *Bright v. Nimmo*, 756 F.2d 1513, 1517 n.3 (11th Cir. 1985) (citing *Coile v. Fin. Co. of Am.*, 221 Ga. 584, 585, 146 S.E.2d 304, 305 (1965) ("The failure of appellant to allege either payment or a tender of the balance due on the debt secured by the deed was fatal to his equitable petition to enjoin the sale of the property . . . .")).  Here, while Plaintiff alleges that he "did in fact remit[] thousands of dollars to Bank of America," and that he made "numerous payments to Bank of America," which has "collected an approximate amount of around $30,000 in monthly payments" from Plaintiff [Doc. 76 at 5, 12], this does not mean that Plaintiff was current on his payments on the Note.  Thus, Plaintiff has failed to show that he is entitled to have the foreclosure proceedings enjoined.

65

Second, under Rule 65 of the Federal Rules of Civil Procedure, the Court may not issue a TRO or a preliminary injunction unless "the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). Plaintiff has not offered to tender any amount as security for an injunction or indicated that such an offer would be forthcoming if the injunction were granted. Although the Court, in its discretion, may elect to require no security at all before granting preliminary injunctive relief, Plaintiff has failed to come forward with any evidence to show that Defendants would not incur costs or be damaged by a wrongfully granted injunction or why security is otherwise unnecessary.

These reasons alone provide adequate grounds for denying the motion for TRO or preliminary injunction. Nevertheless, the undersigned turns to Plaintiff's claims and determines that temporary injunctive relief is inappropriate because Plaintiff has not demonstrated a substantial likelihood of success on any of his claims.

### 1.    Legal Standard

A party may move for a TRO or preliminary injunction under Rule 65 of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 65(a), (b). To obtain a TRO or preliminary injunction, the moving party must establish: (1) a substantial likelihood

that he will succeed on the merits; (2) that he will suffer irreparable injury if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-moving party; and (4) that entry of the relief would serve the public interest. *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1225-26 (11th Cir. 2005) (per curiam).  The movant's likelihood of success on the merits is the most important of the four factors because if the movant is unable to make such a showing, the other requirements need not be considered.  *Bloedorn v. Grube*, 631 F.3d 1218, 1229 (11th Cir. 2011) (citing *Pittman v. Cole*, 267 F.3d 1269, 1292 (11th Cir. 2001)).  A TRO and a preliminary injunction are extraordinary and drastic remedies, and the moving party has the burden of clearly establishing each of the factors.  *See Four Seasons Hotels & Resorts, B.V. v. Consorcio Barr, S.A.*, 320 F.3d 1205, 1210 (11th Cir. 2003).

### 2.      Likelihood of Success on the Merits

Plaintiff has not demonstrated the likelihood of success on the merits.  As discussed above, the undersigned **RECOMMENDS** that BANA's and McCalla's motions to dismiss, [Docs. 80, 81], be **GRANTED** and Northstar's motion to dismiss (construed as a motion for judgment on the pleadings) and for partial summary judgment, [Doc. 85], be **GRANTED**.  Further, it appears that the tentatively scheduled September 2012 foreclosure did not occur, and to the Court's knowledge another date

67

has not been proposed.

For these reasons, the undersigned **RECOMMENDS** that the motion, [Doc. 98], seeking a TRO to enjoin a potential foreclosure sale be **DENIED**.

## VI.   CONCLUSION

For the reasons above, the undersigned **RECOMMENDS** that BANA's and McCalla's motions to dismiss, [Docs. 80, 81], be **GRANTED**; Northstar's motion to dismiss (construed as a motion for judgment on the pleadings) and for partial summary judgment, [Doc. 85], be **GRANTED**; Plaintiff's motion for injunctive relief, [Doc. 98], be **DENIED AS MOOT**; and Plaintiff's motion to change the motion for injunctive relief to one for "non-emergency" injunctive relief, [Doc. 101], be **DENIED**, and Plaintiff's Amended Complaint, [Doc. 76], be **DISMISSED WITH PREJUDICE**.[24]

---

[24]   When it appears that a *pro se* plaintiff's complaint, if more carefully drafted, might state a claim, the district court should give the *pro se* plaintiff an opportunity to amend his complaint instead of dismissing it with prejudice. *See Bank v. Pitt*, 928 F.2d 1108, 1112 (11th Cir. 1991), *overruled in part by Wagner v. Daewoo Heavy Indus. Am. Corp.*, 314 F.3d 541, 542 (11th Cir. 2002) (en banc). Although *Wagner* overruled *Bank* as to counseled litigants, it specifically stated that it did not address *pro se* litigants. *See Wagner*, 314 F.3d at 542 n.1. Thus, the *Bank* rule remains applicable to *pro se* litigants when their complaints are dismissed with prejudice. *Id.*; *see also Duff v. Steub*, 378 Fed. Appx. 868, 872 n.5 (11th Cir. Apr. 29, 2010). Dismissal with prejudice is proper, however, if the *pro se* plaintiff has indicated that he does not wish to amend his complaint or if a more carefully drafted complaint could not state a valid claim. *Jemison v. Mitchell*, 380 Fed. Appx. 904, 907 (11th Cir. May 27, 2010).

AO 72A (Rev.8/82)

The Clerk is **DIRECTED** to terminate the referral to the undersigned.

**IT IS SO DIRECTED AND RECOMMENDED**, this the 10th day of January, 2013.

_____
**ALAN J. BAVERMAN**
**UNITED STATES MAGISTRATE JUDGE**

---

Here, Plaintiff has already amended his complaint twice.  [*See* Docs. 21, 76]. The undersigned therefore **RECOMMENDS** that any dismissal be **WITH PREJUDICE**.

69